OPINION
{¶ 1} This is an appeal from the conviction and sentence of Appellant on one count rape with a violent sexual predator specification and one count of kidnapping with a sexually motivated offense specification and a violent sexual predator specification.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On or about July 25, 2001, Appellant was arrested for the rape and kidnapping of Tonya Kline, a former girlfriend.
 {¶ 3} Appellant's relationship with the victim ended in June, 2001. Subsequently, Ms. Kline called the Mt. Gilead police on at four occasions to file reports against appellant for the following: Appellant attacked her lawn mower with a baseball bate, cut her telephone lines; Appellant left threatening and annoying telephone messages on the victim's answering machine; Appellant flattened the tires on Ms. Kline's boyfriend's car; Appellant broke into Ms. Kline's apartment and slashed her waterbed mattress, killed her son's goldfish and stole a number of items including her address book, wallet, checkbook, jewelry and clothing. (T. at 284-291).
 {¶ 4} On July 24, 2001, Appellant called Ms. Kline and told her to meet him at the Mount Gilead State Park. (T. at 298-300). Appellant promised her that he would return her property to her if she met with him and agreed to drop the charges she had filed against him. (T. at 300). Appellant warned Ms. Kline not to involve the police. Id.
 {¶ 5} This telephone conversation was recorded with a device provided to Ms. Kline by the Morrow County Prosecutor's office. (T. at 292-293).
 {¶ 6} Ms. Kline testified that when she arrived at the park at approximately 7:00 p.m. on July 24, 2001, Appellant threatened her knifepoint and led into a wooded area where held her captive for approximately two hours. (T. at 303-313). Ms Kline testified that Appellant then forced her remove her clothing, bound her wrists with duct tape and subjected to her forced vaginal intercourse and fellatio. Id. Appellant took several photographs supporting the occurrence of fellatio and as well as other sexual activity. Id. Upon releasing Ms. Kline, Appellant threatened to publish the photographs if se involved the police.
 {¶ 7} The following day, an investigator from the Morrow County Prosecutor's Office arrived at Ms. Kline's residence to pick up the recording device and found her to be nervous, afraid and upset. (T. at 267). She broke down sobbing. Id. Ms. Kline told the investigator about the rape and the kidnapping. (T. at 268). He, in turn, reported the events to the Morrow County Sheriff's Department, which sent a detective to Ms. Kline's residence to speak with her. (T. at 335). He also took photographs of the remnants of the duct tape on her arms and took her to the hospital where a rape kit examination was performed. (T. at 335-337).
 {¶ 8} Based on the above, Appellant was arrested. (T. at 339). Appellant first denied seeing Kline or being in the park on the night in question. (T. at 361) He then changed his story and admitted to meeting Ms. Kline in the park but maintained that the sexual conduct was consensual. (T. at 363). Appellant again changed his story, stating that Ms. Kline did not want to perform oral sex on him but that once he forced her she consented. (T. at 362). The story changed once again to Ms. Kline wanting initially to perform oral sex but then stopping, which caused Appellant to force her to engage in vaginal intercourse with him. (T. at 362-363). After three or four minutes, he stated, he no longer had to force her because she "got into it". Id.
 {¶ 9} The police took Appellant to the park where he led them to the scene of the foregoing events. (T. at 341). The officer's found a piece of duct tape at the scene. T. at 342). Appellant also gave the police the photographs and the vibrator used in the incident. (T. at 347).
 {¶ 10} On October 18, 2001, the Morrow County Grand Jury indicted Appellant on charges of Rape and Kidnapping. Each charge included a sexually violent predator specification. The kidnapping charge carried a sexual motivation specification. The charges also initially contained repeat violent offender specifications but these were subsequently dismissed.
 {¶ 11} On October 29, 2001, a two-day jury trial commenced on the charges which resulted in findings of guilty on each count contained in the indictment.
 {¶ 12} On November 29, 2009, the specifications were tried to the court.
 {¶ 13} The trial court found appellant guilty of all of the specifications contained in the indictment. The trial court then sentenced Appellant to concurrent indefinite sentences of seven years to life. Appellant was also found to be a sexual predator by operation of law.
 {¶ 14} It is from this conviction and sentence that Appellant prosecutes the instant appeal, assigning the following errors for review:
 ASSIGNMENTS OF ERROR {¶ 15} "I. The trial court erred when it convicted John Smith of a sexually violent predator specification in the absence of sufficient evidence to support a conviction."
 {¶ 16} "II. The defendant was denied the effective assistance of counsel when trial counsel failed to move for dismissal of the sexually violent predator specifications based upon the defendant's statutory ineligibility for sexually violent predator status."
 {¶ 17} "III. The trial court erred in permitting evidence of prejudicial "other acts" thereby denying appellant Smith his rights to due process of law and to a fair trial as guarateed by theFourteenth Amendment to the United States Constitution and Article I, Section 16 of the Ohio Constitution."
 I. {¶ 18} In his first assignment of error, Appellant argues that the trial court did not have sufficient evidence to support a conviction on the sexually violent predator specification. We agree.
 {¶ 19} At the bench trial on the specifications in this matter, the prosecution presented evidence that Appellant had a 1989 conviction for sexual battery.
 {¶ 20} Appellant was charged with a sexually violent predator specification in accordance with R.C. 2941.148. In order to determine whether Appellant is a sexually violent predator the factors set forth in R.C. 2971.01(H) must be examined:
 {¶ 21} "(1) "Sexually violent predator" means a person who has been convicted of or pleaded guilty to committing, on or after the effective date of this section, a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."
 {¶ 22} However, R.C. 2971.01(H) requires that the offense have been committed on or after the effective date of this section.
 {¶ 23} Even though such was presented at the trial and sentencing of Appellant, in its brief, the State does not dispute that the 1989 offense does not qualify because it was committed prior to the effective date of R.C. 2971.01(H).
 {¶ 24} The State now argues that the Rape charge in the instant case may serve as the underlying sexual offense for the specification.
 {¶ 25} We agree with the Third District in State v. Reigle (Nov. 9, 2000), Hancock App. No. 5-2000-14, wherein it held that allowing the state to prove that an individual has been convicted or pleaded guilty to a sexually violent offense by using the underlying charges in the indictment, would lead to an awkward and obtuse interpretation and application of the sentencing provisions contained in R.C. 2971.03(A)(4).
 {¶ 26} We agree with the Third District's analysis in Reigle, supra, and interpret R.C. 2971.01(H) to mean that the accused must have been convicted of a sexually violent offense prior to conviction of the offense charged in the indictment.
 {¶ 27} Based on the above, we find that the evidence used to convict Appellant of the "conviction" prong of the sexually violent predator specification was insufficient as a matter of law. We do not decide or disturb the finding that Appellant is likely to commit future sexually violent offenses.
 {¶ 28} This matter is remanded to the trial court for a new sentencing hearing in accordance with this opinion.
 {¶ 29} Appellant's first assignment of error is sustained.
 II. {¶ 30} In his second assignment of error, Appellant argues that his trial counsel was ineffective in failing to move to dismiss the sexually violent predator specifications contained in the indictment.
 {¶ 31} Having remanded this matter for a new sentencing hearing on the basis of insufficient evidence in Assignment of Error I, we find that Appellant's second assignment of error is moot.
 III. {¶ 32} In his third and final assignment of error, appellant argues that the trial court erred in allowing presentation of "other acts" evidence at trial. We disagree.
 {¶ 33} More specifically, Appellant argues that the trial court should not have allowed the introduction of evidence at trial of Appellant's telephone harassment of the victim and theft at her apartment.
 {¶ 34} The trial allowed such evidence to come in under Evid.R. 404(B) which allows the admission of extrinsic evidence in limited circumstances such as "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 35} We find that the trial court did not err in admitting such evidence. Appellant's prior conduct could be considered as evidence of motive. The telephone calls illustrated his plan to lure her to the park as well as his threats toward her. Such evidence could also be considered to negate Appellant's claim that the sexual encounter was voluntary.
 {¶ 36} Appellant's third assignment or error is denied.
 {¶ 37} For the above reasons, the decision of the Morrow County Common Pleas Court is affirmed in part and reversed in part and remanded for a resentencing hearing.
Farmer, P.J. and Wise, J. concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Morrow County, Ohio, is affirmed in part, reversed in part and remanded. Costs assessed to Appellee.